## ALABAMA SAWMILL CO. v. N. V. GEBR. VAN UDEN'S SCHEEPVAART EN AGENTUUR MIJ.

### No. 274.

District Court, E. D. Louisiana, New Orleans Division.

March 31, 1941.

Deutsch and Kerrigan, of New Orleans, La., for plaintiff.

Terriberry, Young, Rault & Carroll, of New Orleans, La., for defendant.

CAILLOUET, District Judge.

At New Orleans, on April 11, 1936, a bill of lading carrying the printed heading "Strachan Line, Strachan Shipping Co. Agents", was issued under "authority of the owners" by said Strachan Shipping Co., "as agents", and signed by one A. B. Donalson "For the Master".

This document evidenced the receipt from the Alabama Sawmill Company, in apparent good order and condition for shipment on board the S. S. "Jobshaven" from New Orleans to Rotterdam, of 5,499 pieces of rough pitch pine lumber, represented as containing 51,967 superficial feet; the said cargo to be delivered unto the order of shipper, "notify Stahl & Zoon, Rotterdam, Holland", on payment of the agreed freight of $14 per thousand feet, or $727.54, and there being stamped on the face of the bill of lading the following, viz.: "For delivery consignee will please apply to Messrs. N. V. Gebr. Van Uden's Shipping & Agency Co., Ltd., Rotterdam, Holland."

By stipulation of December 11, 1939, it was established that C. W. Hempstead, doing business as the Alabama Sawmill Company, was the real owner of the said lumber shipment, and the libelant herein.

The lumber was stowed in the Jobshaven's No. 4 lower hold. Although repeated erroneous references appear in the record to tween-decks stowage above said lumber, the vessel, actually, had no tween-deck; she was a small cargo steamer with a single deck, and a long bridge on said deck; the remaining deck space, forward and aft of such bridge, being the well, or main, deck.

In the forepart of the No. 4 bridge deck stowage compartment immediately above the No. 4 lower hold where lay the lumber shipment, there was stowed 65 barrels of lubricating oil.

The Jobshaven, which sailed out of New Orleans on April 12, 1936, ran into such a heavy storm, some 13 days thereafter, that the master found it necessary to heave to and for the whole of 24 hours to pour storm oil and let the Jobshaven drift and chose her most favorable position in the trough of the sea; the vessel pitching and rolling heavily and heeling over to either side more than 20 degrees, and such rolling and pitching being accompanied by bumping and jerking.

Although disturbance of the cargo stowed in the bridge deck compartment was known to the master during the progress of the storm, no inspection could be made, he testified, until the subsidence of the turbulent conditions, but, as soon as possible, he added, i. e., on April 28th, such inspection was effected and it was found that there had been a shifting and partial disarrangement of the oil cargo, with resultant breaking of some of the barrels, leaks in others, and a 4-inch spread of oil over the floor of the stowage compartment (which was the main deck of the vessel and the "ceiling" of the lower hold wherein was stowed libelant's lumber shipment); some of which free oil, as was subsequently ascertained, had dripped onto said lum-

ber through two small rivet holes in the main deck, where thitherto the base plate of the foremost stanchion had been firmly bolted to said deck; such stanchion, apparently, having been wrested loose from its former fixed position during the storm, with a tearing out of the two bolts in question, and the leaving of empty spaces wherein they formerly fitted.

Upon arrival at Rotterdam, the discharge of the lumber cargo was proceeded with, and it was then established that, by reason of such oil drippings, damage had been done to libelant's lumber, for which this present libel seeks to recover the claimed sum of $350 from N. V. Gebr. Van Uden's Scheepvaart en Agentuur Mij., at Rotterdam, a corporation, which libelant avers to be the owner and operator of the S. S. Jobshaven.

It is in evidence that a survey of the damaged lumber cargo was made by a sworn broker and surveyor of Rotterdam, one A. Kiewit, representing himself as having been "appointed by Messrs. N. V. Standard Transport Maatschappij, Rotterdam, with knowledge and approval of Messrs. M. Van Marle, Rotterdam, as Average Agents of the Phoenix Assurance Company, Ltd., of London, in order to examine, estimate and fix—with the usual reserve as to liability of the policy—the damage sustained * * *"; that the damage was fixed, and that, "the shipbrokers, Messrs. Gebrs. Van Uden's Scheepvaart & Agentuur Mattschappij, Rotterdam were kept responsible for this damage by the consignee, but declined all liability with reference to the sea-protest" which had, reputedly, been "made by the Captain of the S. S. Jobshaven at Hamburg", and to which the surveyor's official certificate of survey (in evidence and from which come the foregoing several quotations) made special reference touching to cause of the damage ascertained to have been done to the lumber cargo.

It is also in evidence that on May 13, 1936, Standard Transport Maatschappij N. V., of Rotterdam, wrote to N. V. Gebr. Van Uden's Scheepvaart & Agentuur Maatschappij, at Rotterdam, calling attention to the oil damage done to the lumber cargo, and therein also advising "we shall hold you responsible for the damage"; to which letter, the following · answer was made two days thereafter, by said named addressee, to-wit:

"In reply to yours of the 13th inst., with reference to damage to two parcels of 'Kilndried saps' marked KS 915 and KS 916, we beg to advise you that the vessel encountered very bad weather on the voyage, in consequence of which some barrels of oil stowed in the 'tween deck were broken and leaked.

"The damage to your lumber must be attributed to this cause, and since the master has protected himself against claims by lodging protest on arrival at Hamburg, we must deny any liability.

"We have applied for a copy of the protest, and shall place it at your disposal as soon as possible."

Nothing further appears to have taken place until November 9th, 1936, when New Orleans counsel, the proctors for libelant herein, addressed the following letter to Strachan Shipping Company, at Mobile, Alabama, viz.:

"Re: SS 'Jobshaven'—Alabama Sawmill Company Bill of Lading dated April 11, 1936—New Orleans—Rotterdam—. Claim for damage to Pitch Pine Lumber—$275.00.

"Gentlemen:

"The above claim against your company arising out of damage by lubricating oil has been placed in our hands for attention. Claim is accordingly made against your company for the amount of loss and damage. In support of this claim, copies ·of shipper's invoices, bill of lading and survey report are herewith enclosed.

"As the documents indicate liability on your part, we shall appreciate your prompt consideration and remittance to cover. In the meantime, please acknowledge receipt of this letter with enclosures."

By answer of the succeeding day, Strachan Shipping Company advised libelant's said counsel as follows, viz.:

"S. S. 'Jobshaven'

"We are in receipt of your letter November 9, enclosing claim in connection with damage to cargo by the above named steamer in the sum of $275.00.

"We have forwarded documents on to our principals in Rotterdam, with request that they advise us, in due course, with respect to this claim, and will again communicate with you when we hear from owners."

It is stipulated that, thereafter, said Strachan Shipping Company notified coun-

sel that, upon instructions from the company's principals, at Rotterdam, "liability was declined".

Johan Van't Hoff, one of respondent's witnesses, testified that he is managing director of N. V. Gebrs. Van Uden's Scheepvaart en Agentuur Mij, at Rotterdam, and that the S. S. Jobshaven is owned and operated by the N. V. Maatschappij s. s. Jobshaven of Rotterdam, whereof said first-mentioned company (which is sued herein as alleged owner and operator of the Jobshaven) is the manager. He further testified that all contracts of affreightment issued by N. V. Gebrs. Van Uden's Scheepvaart en Agentuur Mij at Rotterdam, for the Jobshaven are signed by his said company as agent, without expressly mentioning the fact that the company acts as agent for the N. V. Maatschappij s. s. Jobshaven of Rotterdam.

The respondent herein denies that it owns or operates the S. S. Jobshaven, and from the record it is quite clear that respondent entered into no contract of affreightment covering the damaged lumber cargo.

Libelant's counsel, however, contend that, from the testimony of Johan Van't Hoff (and there is none other on this particular phase of the matter) it is apparent that N. V. Gebrs. Van Uden's Scheepvaart en Agentuur Mij at Rotterdam is the manager of a one-ship corporation, and is the agent for the S. S. Jobshaven so owned by said corporation namely: N. V. Maatschappij s. s. Jobshaven of Rotterdam; and that said agent operates the vessel for her true owner, which remains an undisclosed principal.

Counsel urge that, under the well-known principle of law (in support of which they cite recognized authorities), when an agent enters into contractual relations, on behalf of an undisclosed principal, such agent binds his principal, who may be sued for the agent's acts, done within the scope of his authority and in the course of his employment; although the agent, himself, and not the principal, may be sued.

As to the libel herein, however, there can be no serious contention that respondent N. V. Gebrs. Van Uden's Scheepvaart en Agentuur Mij at Rotterdam entered into a contract for and on behalf of an undisclosed principal. It made no such contract with libelant as respects the receipt on board the S. S. Jobshaven for delivery at Rotterdam, of libelant's lumber cargo. It, thereafter, made no express or implied contract either for an undisclosed principal, or for itself, relative to the payment of the compensatory damages now claimed by libelant.

### Findings of Fact.

1. N. V. Gebrs. Van Uden's Scheepvaart en Agentuur Mij at Rotterdam neither owned nor operated the S. S. Jobshaven.

2. N. V. Gebrs. Van Uden's Scheepvaart en Agentuur Mij at Rotterdam entered into no contract express or implied, for the carriage on the said named vessel, and delivery at Rotterdam, of libelant's lumber cargo.

3. N. V. Maatschappij s. s. Jobshaven of Rotterdam was the owner and operator of the S. S. Jobshaven.

4. The contract of affreightment, as evidenced by the bill of lading depended upon by libelant, was issued by Strachan Shipping Company, as agent and under authority of the owner, which was not respondent, but N. V. Maatschappij s. s. Jobshaven of Rotterdam; and such bill of lading was signed by the master of the Jobshaven.

### Conclusions of Law.

Under such a state of facts as the foregoing, no right of action exists in favor of libelant C. W. Hempstead, doing business as Alabama Sawmill Company, against respondent, N. V. Gebrs. Van Uden's Scheepvaart en Agentuur Mij at Rotterdam.

Accordingly, the libel must be dismissed, with costs.